This timely appeal comes on for consideration upon the record in the trial court, the parties' briefs and their oral argument to this court. The Appellant Warren Spivey (hereinafter "Spivey") now appeals the decision of the Mahoning County Court of Common Pleas judgment denying his petition for post-conviction relief. For the following reasons, we affirm the judgment of the trial court.
On January 3, 1989, Spivey broke into Veda Eileen Vesper's residence and brutally beat her to death. Spivey robbed Vesper of jewelry and other personal property and fled the scene in the victim's automobile. Later that evening, Spivey was arrested by police in connection with the murder.
On January 18, 1989, Spivey was indicted by the Mahoning County Grand Jury for the aggravated murder of Vesper. Count One of the indictment charged Spivey with the purposeful killing of Vesper during the commission of an aggravated robbery and/or aggravated burglary. In addition, Count One carried an R.C. 2929.04(A)(7) death penalty specification alleging that the murder was committed during the course of an aggravated robbery and/or aggravated burglary. Spivey was also indicted on one count of aggravated robbery, one count of aggravated burglary, and one count of grand theft of a motor vehicle.
With assistance of counsel Attorney Tom Zena and Attorney R. Scott Krichbaum, Spivey pled not guilty at his arraignment to the charges and specification set forth in the indictment. Thereafter, the court scheduled trial for March 27, 1989. However, Spivey was granted a continuance, and trial was rescheduled for September 6, 1989.
On August 15, 1989, Spivey requested an order allowing a defense expert to conduct DNA testing of certain items of bloodstained clothing that had been seized by police during a January 4, 1989 search of Spivey's home. A hearing on the motion was conducted on August 21, 1989. Additionally, on August 21, the trial court granted the motion for scientific testing, ordered a continuance of the September 6 trial date, and rescheduled the trial for September 25, 1989. The trial court also ordered, in two separate judgment entries that "[n]o further continuances shall be granted."
On August 31, 1989 Spivey moved to continue the September 25 trial date on the basis that the DNA testing had not been completed. On September 1, 1989 the trial court ordered the drawing of the special venire for the September 25 trial date. Defense counsel objected to the drawing of the venire, since the defense had not yet received the DNA test results. The trial court noted the objection and proceeded with the drawing of the special venire.
On September 19 or 20, 1989 Spivey entered a plea of not guilty and not guilty by reason of insanity, moved for an order for psychological or psychiatric evaluation in connection with the insanity plea, and requested the appointment of Dr. A. James Giannini to evaluate Spivey's mental condition at the time of the offenses. On September 20, the trial court ordered the Forensic Psychiatric Center of District Eleven, Inc. to conduct the examination of Spivey. On September 21, 1989 Spivey moved for the appointment of an independent forensic examiner to evaluate his mental condition at the time of the offenses. Also, on September 21, Spivey filed yet another motion for a continuance of the September 25, 1989 trial date. On September 22, Spivey filed a "supplemental" motion for continuance.
Prior to September 25, 1989 the Forensic Center issued a report by Dr. Stanley J. Palumbo, a psychologist, indicating that Spivey was sane at the time of the offenses. On September 25, the trial court denied Spivey's requests for a continuance and began the questioning of prospective jurors who had expressed a desire to be excused from service. On September 26, the trial court, pursuant to former R.C. 2945.39, appointed Dr. Giannini to conduct a psychiatric evaluation of Spivey for purposes of the insanity plea. Giannini's psychiatric evaluation of Spivey was completed on September 29, 1989 and Giannini found Spivey to be sane at the time of the murder and found him competent to stand trial.
On October 2, 1989, Spivey waived his right to trial by jury and elected to be tried by a three-judge panel. Spivey's signed jury waiver form was filed in the cause and made part of the record thereof in accordance with the requirements of R.C. 2945.05. Thereafter, on October 3, Judges Economus, Jenkins, and McNally were designated as the members of the three-judge panel and trial was set to commence October 10, 1989. On October 6, Spivey moved for a continuance of the October 10 trial date pending the completion of the DNA testing.
On October 10, 1989 the parties appeared in chambers before Judges Economus and McNally. The chambers discussion involved, among other things, a plea agreement that had been reached between the state and the defense. The discussions indicated that Spivey had agreed to plead no contest to the charges and specification set forth in the indictment. In exchange, the state agreed that, during the penalty phase, the prosecution would be limited to cross-examination of defense witnesses and would not introduce independent evidence during mitigation except to rebut false or perjured testimony. Additionally, the state agreed to refrain from making any recommendation concerning the death penalty. Following these discussions, appellant appeared before the three-judge panel, withdrew his pleas of not guilty and not guilty by reason of insanity, and entered a written plea of no contest to each count. Following an extensive Crim.R. 11 colloquy between the panel and Spivey, the panel accepted his pleas of no contest.
On October 10, 1989 the panel conducted an evidentiary hearing to determine the underlying factual and evidentiary basis for the charges and specification alleged in the indictment. Evidence was presented to the panel through exhibits, stipulations, and the live testimony of several witnesses. At the conclusion of the hearing, the panel found Spivey guilty of the charges and specification set forth in the indictment. On October 11, 1989 the panel filed a judgment entry reflecting its findings of guilt.
The penalty phase was scheduled to commence October 30, 1989. On October 20 and 24, Spivey moved for a continuance of the penalty phase, claiming that a critical defense witness would be unavailable from October 28 through November 5. Spivey also, on October 24, 1989, moved to withdraw his pleas of no contest on the basis of what he referred to as "newly discovered evidence." Attached to the motion was a report from Cellmark Diagnostics Laboratory. The report indicated that the blood on the two articles of clothing that had been seized by police during the search of Spivey's home was not the blood of the victim. In contrast, the state's evidence at the October 10 hearing on Spivey's pleas of no contest had included testimony that the blood on the clothing was consistent with the blood of the victim.
However, the state's evidence in that regard had involved non-DNA testing procedures. Therefore, in light of the report from Cellmark, Spivey sought to withdraw his pleas of no contest and requested that the panel vacate its findings of guilt and allow the case to proceed to trial by jury. On October 27, 1989 the panel denied Spivey's motion to withdraw the pleas and reset the mitigation hearing for November 13.
The mitigation hearing commenced November 13 and concluded on November 17, 1989. Dr. Eisenberg, a mitigation expert assisted by Lisa Roth, testified on the behalf of Spivey. On November 20, 1989, the panel sentenced appellant to death for the aggravated murder of Vesper. For the offenses of aggravated robbery, aggravated burglary, and grand theft of a motor vehicle, Spivey was sentenced in accordance with law.
On direct appeal, this court affirmed the judgment of the trial court and upheld Spivey's death sentence. State v. Spivey (Jan. 13, 1997), Mahoning App. No. 89 C.A. 172, unreported. Timely appeal was then taken to the Supreme Court which similarly overruled Spivey's appeal. State v.Spivey (1998), 81 Ohio St.3d 405.
On September 20, 1996, Spivey proceeded to file a petition to vacate his convictions and death sentence. The state then filed a motion for summary judgment on March 14, 1997 which was subsequently overruled by the trial court. Thereafter, an evidentiary hearing was held on October 18 and 22, 1999. On May 1, 2000, the trial court denied the Petition. This timely appeal followed.
Absent a showing of an abuse of discretion, a reviewing court will not overrule a trial court's findings on a petition for post-conviction relief that are supported by competent and credible evidence. State v.Mitchell (1988), 53 Ohio App.3d 117, 119, 559 N.E.2d 1370. "Abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172-173,404 N.E.2d 144, 148-149; State v. Keenan (1998), 81 Ohio St.3d 133, 137,689 N.E.2d 929, 937.
Notably, the trial court granted Spivey's request for a post-conviction hearing having dismissed the state's motion for summary judgment. A post-conviction hearing is a civil proceeding governed by the Rules of Civil Procedure. State v. Nichols (1984), 11 Ohio St.3d 40, 42-43, 11 OBR 188, 189-191, 463 N.E.2d 375, 377-378; State v. Pless (1993),91 Ohio App.3d 197, 632 N.E.2d 524. In such a hearing, the petitioner bears the burden of proof. Because post-conviction hearings are civil in nature, the petitioner needs only to prove the claim by a preponderance of the evidence. See State v. Milanovich (1975), 42 Ohio St.2d 46, 71 O.O.2d 26, 325 N.E.2d 540; State v. Brown (Mar. 22, 1991), Tuscarawas App. No. 90AP090054, unreported.
Nonetheless, Spivey's burden on appeal is much greater than it would have been had the hearing not been granted. More specifically, if the trial court would have granted the state's motion for summary judgment, we would be reviewing Spivey's claims de novo. However, the trial court proceeded with the hearing and heard testimony from both sides. In Statev. Awan (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, the Ohio Supreme Court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear witnesses and observe their demeanor:
 "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact." Id. at 123, 489 N.E.2d at 280.
Having established the proper standard of review in this case, we will now proceed with the merits. As Spivey's first three assignments of error encompass similar propositions of both fact and law, they will be addressed together.
 "The Trial Court Abused its discretion in Denying the First Cause of Action of the Petition for Post-conviction Relief, as There Was Credible Evidence That Appellant Was Not Competent to Stand Trial and Hence Not Competent to Waive a Jury."
 "The Trial Court Abused its Discretion in Denying the Second Cause of Action of the Petition for Post-conviction Relief, as There Was Credible Evidence That Appellant Was Not Competent to Stand Trial and Hence Not Competent to Enter a Plea of No Contest."
 "The Trial Court Abused its Discretion in Denying the Third Cause of Action of the Petition for Post-conviction Relief, as There Was Credible Evidence That Appellant Was Not Competent to Stand Trial and Hence Not Competent to Waive a Jury or Enter a Plea of No Contest; the Trial Court Failed Sua Sponte, to Seek a Competence Evaluation; and the Prosecutor Failed to Seek a Competence Evaluation."
The United States Supreme Court held in Godinez v. Moran (1993),509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321, that the standard for determining the competency to stand trial and the competency to enter a plea were the same: whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rationale as well as factual understanding of the proceedings against him." Id. at syllabus. Therefore, it is appropriate for us to address Spivey's issues of competence collectively.
At the outset it is critical to note the issue of Spivey's competency was dealt with at length on direct appeal by the Ohio Supreme Court. In its opinion relating to Spivey's direct appeal, the Court addressed Spivey's contention that the three-judge panel erred by accepting the pleas of no contest without first inquiring into his competency stating:
 "[a]ppellant does not assert that he was legally incompetent during the trial court proceedings but, instead, complains that the panel did nothing to determine whether he was competent to enter the pleas. Additionally, appellant contends that the panel's Crim.R. 11(C) inquiry into whether he understood the nature and consequences of the no contest pleas should have been more thorough. * * *
 [A]ppellant apparently argues that the trial court should have sua sponte conducted a hearing on the issue prior to accepting the pleas of no contest. However, appellant does not point to anything in the record indicating that he was incompetent at the time he entered the pleas of no contest, and our review of the record has revealed no indicia of incompetency that would have required a hearing on that matter. * * *
 The record does reflect that when an issue concerning appellant's sanity arose while the case was pending before Judge Economus, defense counsel made appropriate motions for sanity evaluations and the appropriate examinations were conducted. A report of one of the examinations specifically included a finding that appellant was competent to stand trial. Further, appellant had previously been examined by a psychologist in 1988 in connection with an unrelated criminal case, and the report of that examination indicated that appellant was not only competent to stand trial, but that he understood the notion of plea bargaining. * * *
 Appellant also argues that the panel was required to do more than it did during its Crim.R. 11(C) colloquy with appellant to ensure that he understood the nature and consequences of his pleas. We disagree. The record is clear that appellant manifestly understood the consequences of entering his pleas of no contest. Indeed, when appellant submitted his written plea to each count to the panel, defense counsel informed the panel that he (counsel) had "gone over it [the written plea] in its entirety and read it to my client." * * * In this regard, we are absolutely convinced that the panel did not err by accepting appellant's pleas of no contest. The Crim.R. 11 dialogue between the panel and this appellant was more than adequate to ensure that he knew the consequences of his pleas (including the consequences relating to a waiver of a jury trial) and that the pleas were knowingly, intelligently, and voluntarily made. State v. Spivey (1998), 81 Ohio St.3d 405,409 692 N.E.2d 151.
Still, Spivey contends it was an abuse of discretion to refuse to vacate a jury waiver when a preponderance of the evidence indicated that he was not intellectually capable of effecting a valid waiver and when the trial court is aware of his mental difficulties.
This is an issue that could have and in fact was addressed on direct appeal. Therefore, res judicata would be a proper basis for dismissing this claim. State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169. To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record. State v. Moore (1994), 99 Ohio App.3d 748, 651 N.E.2d 1319.
Clearly, Spivey's third assignment of error is barred by res judicata
as this issue was presented on direct review. The Ohio Supreme Court found that the trial court was under no duty to sua sponte raise the issue of Spivey's competency as all the information presented to the trial court confirmed its belief that Spivey was in fact competent. There is nothing in the record to prove otherwise. More importantly, at this stage in the proceedings, Spivey fails to present any evidence outside the record that would lead this court to believe the trial court was placed on notice of Spivey's alleged incompetency.
However, Spivey attempts to avoid dismissal of his first two assignments of error by presenting evidence de hors the record that he was not competent to waive his right to a jury trial or to plead no contest. First, Spivey offers an affidavit of trial counsel Attorney Tom Zena stating, "Mr. Krichbaum and I advised the Defendant, Warren Spivey, to plead no contest, as the test results were still not available when the day for trial before a three judge panel came."
The following colloquy, which was referenced by the Ohio Supreme Court in Spivey's direct appeal, occurred on the record:
 "Judge Economus then stated, `I would — and I want the record to be clear on this — this Court would use every effort, and I [previously] indicated this in concert with the prosecution and the defense counsel, to have that evidence [the DNA test results] available before the actual trial of this case.'
 Defense counsel replied that the defense had not abandoned the DNA testing and that counsel was simply attempting to reiterate, at every possible point, the need for the DNA test results.
 Judge Economus then stated, `I don't want it to appear that the only reason you are pleading this afternoon is because the Court denied your request for a continuance because you haven't received the pertinent evidence for the defense of your case.'
 In response, one of appellant's defense attorneys, stated:
 `Your Honor, last Monday [October 2, 1989], we were to begin once again — and that's when we were going to go forward [with voir dire], and that's when we waived the jury trial. We didn't do that to buy time, we did that because we thought that was the right thing to do. So, the Court's statement o[f] concern, that that's the only reason that we are pleading, because we don't have this [the DNA test results], that is not the only reason. It is a consideration, however. * * *
 `Your Honor, Mr. Zena [co-counsel] just mentioned to me, and we had discussed this earlier, that the main reason we are going [sic, doing] this is because of the Rule 11 negotiations. And, of course, we're considering this other situation in making the decision that we made.'" Spivey at 414.
It appears the evidence presented by Spivey de hors the record conflicts with counsel's representations made to the trial court on the record as Spivey now claims he pleaded guilty based on counsel's advice that they try to buy time. Similarly, the defendant in State v. Bays
(1999), 87 Ohio St.3d 15, 716 N.E.2d 1126 informed the trial judge he was waiving because "[m]y counsel feels it's best," and that he did not "know which way [he] want[ed] to go." The Ohio Supreme Court held, "If anything, having the advice of counsel would enhance the voluntariness of his decision." Id. at 87.
The Bays court explained;
 "A waiver is the intentional relinquishment of a known right or privilege. Johnson v. Zerbst (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466. Hence, a defendant must have some knowledge of the nature of the jury trial right to make a valid waiver. Martin, supra, 704 F.2d at 273. However, a defendant need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it. Id. For instance, the United States Court of Appeals for the Sixth Circuit has said: `A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and * * * a judge alone will decide guilt or innocence should he waive his jury trial right.' Id., 704 F.2d at 273. Indeed, that may be more than the Constitution requires to render a waiver knowing and intelligent. See United States v. Sammons, supra, 918 F.2d at 597." Id. at 19.
Following the logic of the Bays court, we conclude Spivey derived benefit from counsel's advice regarding strategy. The Ohio Supreme Court has already determined from the record that Spivey voluntarily and knowingly pleaded guilty. Counsel's advice would only serve to bolster the voluntariness of the plea.
Next, we will address Spivey's contention that regardless of what may be ascertained from the record, he was not competent to either waive his right to a jury trial or to plead no contest. He maintains that he is now and has always been incompetent. As additional evidence de hors the record, Spivey presents testimony from Dr. Eisenberg. When asked whether he had an opinion regarding Spivey's competency at the post-conviction hearing, Dr. Eisenberg stated, "My opinion is he was not competent to waive a jury, to enter a plea of no contest and all the things that follow from that."
Interestingly, Dr. Eisenberg never revealed this discovery to trial counsel and now maintains he was hired only to present evidence at the mitigation stage of the proceedings. He explained that he was not retained to present evidence on competency. Therefore, when he discovered Spivey's alleged incompetency, he did not reveal this discovery as he had no ethical duty to do so. Moreover, if he had been hired for the purpose of assessing competency, Dr. Eisenberg would have conducted further testing. Eisenberg further testified that he discussed Spivey's intellectual capacity with trial counsel. However, he did not recall having a discussion regarding the specific issues on competency.
Despite this testimony, we are precluded from substituting our judgment for that of the trial court where the record contains competent and credible evidence supporting the findings of fact and conclusions of law rendered by a trial court judge. Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 638 N.E.2d 533;Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276; C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.
As previously noted, the trial court overruled the state's motion for summary judgment and granted a hearing. Consequently the trial court was afforded the opportunity to weigh evidence and evaluate the credibility of the witnesses. After hearing all the evidence, the trial court stated in its conclusions of law that both Dr. Palumbo and Dr. Giannini found Spivey to be sane at the time of the murder and competent to stand trial. Notably, Dr. Palumbo, in addition to his own independent evaluation of Spivey, partially relied upon yet another competency report completed two months before Spivey's sentencing by the Forensic Psychiatric Center of District Eleven, Inc. in relation to previous charges.
After reviewing these various opinions, the trial court further expounded on what the Ohio Supreme Court had already addressed,
 "* * * Mr. Spivey had been examined by Dr. Huntsman in 1988 in connection with an unrelated criminal case, and that report indicated that Mr. Spivey was not only competent to stand trial, but that he understood the notion of plea bargaining. Moreover, Mr. Spivey's trial counsel testified in their depositions that they were satisfied that Mr. Spivey was competent.
 Mr. Spivey relies on the recent affidavit and October 22, 1999 testimony of Dr. Eisenberg in which he stated that Mr. Spivey was not competent to waive a jury or enter a plea of no contest. However, Dr. Eisenberg admitted that he did not do a competency evaluation of Mr. Spivey and, if he had, it would have included much more extensive testing and follow up questioning. Furthermore, Dr. Eisenberg admitted he never raised the competency issue with trial counsel."
The only evidence Spivey provided the trial court to counter the evidence presented to the three-judge panel was the testimony of Dr. Eisenberg. The trial court however chose to discredit Dr. Eisenberg's testimony as it was "insufficient to override the overwhelming evidence that Mr.Spivey was competent to waive a jury trial and enter a plea of no contest." We will not now substitute our judgment for that of the trial court as there is competent credible evidence to support this finding. Namely, the reports of three doctors stating that Spivey was in fact competent. Consequently, we find Spivey's first three assignments of error to be meritless.
As his Fourth Assignment of Error, Spivey asserts the following:
 "The Trial Court Abused its Discretion in Denying the Seventh Cause of Action of the Petition for Post-conviction Relief, as There Was Credible Evidence That Appellant Was Not Advised of the Mathematical Probability That He Would Receive a Death Sentence, Which Was Enhanced by Waiver of the Jury."
Spivey claims his trial counsel did not inform him either on the record or outside of the record that one juror could block the imposition of the death penalty when he decided to waive a jury trial. A waiver is the intentional relinquishment of a known right or privilege. Johnson v.Zerbst (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461,1466. Hence, a defendant must have some knowledge of the nature of the jury trial right to make a valid waiver. United States v. Martin (C.A.6, 1983), 704 F.2d 267, 273. However, a defendant need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it. Id.
In Bays, supra the defendant likewise contended his waiver was not knowing and intelligent because the trial court did not explain that a single juror can block a death recommendation and that a death sentence recommended by a jury could not be reimposed if reversed on appeal. The Ohio Supreme Court held in that case,
 "Again, however, these are not aspects of the jury trial right that a defendant must know about before he can knowingly and intelligently waive a jury trial. Martin, supra. The trial court is not required to inform the defendant of all the possible implications of waiver. See State v. Jells (1990), 53 Ohio St.3d 22, 559 N.E.2d 464, paragraph one of the syllabus." State v. Bays (1999), 87 Ohio St.3d 15, 20, 716 N.E.2d 1126.
Thus, Spivey's Fourth Assignment of Error is also meritless.
Spivey advances the following as his Fifth Assignment of Error:
 "The Trial Court Abused its Discretion in Denying the Fourteenth Cause of Action of the Petition for Post-conviction Relief, as There Was Credible Evidence That Appellant Was Deprived of the Effective Assistance of Trial Counsel."
Spivey claims his trial counsel relied upon the theory that "if the prosecutor did not specifically present evidence of aggravating circumstances in the case, the three-judge panel would not order the death penalty." Spivey maintains he was prejudiced by this attitude in that counsel was simply "going through the motions" in presenting a mitigation defense. This assertion was supported by both Lisa Roth and Dr. Eisenberg, experts hired by counsel to assist in the penalty phase. At the postconviction hearing, Dr. Eisenberg testified:
 "I mean, I was operating under a theory and maybe that theory was wrong. The theory was this was a done deal. Present something. They'll give him a life sentence. That was my theory. Had it not been that theory, I would have approached it differently."
Lisa Roth similarly testified:
 "this was going to be the type of thing that we needed to go through the motions of doing mitigation, so that the judges would have something to hang their hat on so that they could not give a death penalty sentence because they had somebody — something to hang their hat on."
When asked by counsel whether a suggestion or representation was made that they just had to go through this to give them something to hang the courts hat on, Roth responded "Absolutely."
The trial court acknowledges in its conclusions of law that Dr. Eisenberg and Roth may have believed there was a virtual guarantee that Spivey would not receive the death penalty. The trial court found, however, "that was merely their impression and there was no evidence of any direct representations to that fact." Assuming arguendo, there had been a direct representation made to the mitigation experts that Spivey would not receive the death penalty, Spivey must still satisfy the requirements set forth by the United States Supreme Court to establish his claim.
To prevail on a claim of ineffective assistance of counsel, Spivey must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires Spivey to satisfy a two-part test. First, Spivey must demonstrate that counsel's representation fell below an objective standard of reasonableness. Second, Spivey must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674.
Even if we were to find that counsel was deficient for improperly taking on the attitude that Spivey would not receive the death penalty so long as he pleaded no contest, Spivey must still meet the second prong of the Strickland test. Spivey has failed to meet this burden. It may very well be true that the mitigation experts did not present all the evidence that they would have liked, but this does not prove that the outcome of this case probably would have been different but for counsel's unprofessional errors. Spivey merely argues that he was obviously prejudiced because he received the death sentence. This is clearly not enough.
It is apparent that a great deal of mitigation evidence was in fact presented to the trial court. The Ohio State Supreme Court stated the following in regards to this evidence:
 "Upon a review of the evidence presented in mitigation, it is clear to us that appellant had a very difficult and troubled childhood. He was plagued by physical and mental problems or deficiencies, had difficulties in school, suffered parental rejection at an early age, was raised in an unsupportive family environment, was treated as an outcast by certain family members, was physically and verbally abused by his parents, and was sexually abused on at least one occasion. We find that appellant's troubled childhood, history, and family background are entitled to some weight in mitigation." State v. Spivey
(1998), 81 Ohio St.3d 405, 424, 692 N.E.2d 151.
Spivey has offered no additional mitigating evidence that would have substantially affected the outcome of this case if produced by trial counsel at the time of sentencing. Because he has failed to satisfy the second prong of the Strickland test, this assignment of error is meritless.
For his sixth and final assignment of error, Spivey states as follows:
 "The Trial Court Abused its Discretion in Denying the Nineteenth Cause of Action of the Petition for Post-conviction Relief as There Was Credible Evidence That Appellant Was Deprived of Due Process and Subjected to Cruel and Unusual Punishment Because His Prosecution Was Politically Motivated."
At his post-conviction hearing, Spivey presented evidence regarding both racist and derogatory comments made by then prosecutor James Philomena against Spivey and his counsel. Further, Spivey argues Philomena sought the death penalty in his case for political purposes as he was running for Ohio Attorney General, although he has presented no evidence in support of this contention.
A presumption of regularity supports prosecutorial decisions and unless there is clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties. United States v.Armstrong (1996), 517 U.S. 456, 464, 116 S.Ct. 1480, 1486,134 L.Ed.2d 687. If a prosecutor has probable cause to believe that an accused committed an offense, the decision whether to prosecute, and what charges to file or bring before a grand jury, generally rests entirely within the prosecutor's discretion. Id. However, pursuant to the equal protection component of the Due Process Clause of the Fifth Amendment, a prosector's decision whether to prosecute may not be based upon "an unjustifiable standard such as race, religion, or other arbitrary classification." Id. In order to establish a claim of selective prosecution, a defendant must show that a prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 1487, quoting Oylerv. Boles (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446.
In State v. Flynt (1980), 63 Ohio St.2d 132, 134, 407 N.E.2d 15, 17, the Ohio Supreme Court wrote regarding the defense of selective prosecution in pertinent part as follows:
 "The law is well settled that the government is subject to constitutional restraints in its choice of those whom it may prosecute. As long ago as Yick Wo v. Hopkins (1886), 118, U.S. 356, 373-74, the United States Supreme Court stated that although a `law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights,' there is a denial of equal protection of the laws.
 The conscious exercise of some selectivity in enforcement is not in itself, however, a violation of the United States Constitution. Oyler v. Boles
(1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446. In order for selective enforcement to reach the level of unconstitutional discrimination the discrimination must be `intentional or purposeful.' Snowden v. Hughes (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497.
Merely showing that "another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith." State v. Freeman
(1985), 20 Ohio St.3d 55, 58. Intentional discrimination will not be presumed from a showing of differing treatment. Id. A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. UnitedStates v. Armstrong (1996), 517 U.S. 456, 463, 116 S.Ct. 1480, 1486,134 L.Ed.2d 687, 698. As the court stated in Armstrong, "the standard is a demanding one." Id. See State v. Getsy (1998), 84 Ohio St.3d 180,702 N.E.2d 866.
In the present case, Spivey contends that the prosecutor made derogatory comments directed toward both him and his counsel. The trial court found that although those allegations may be true, "there is no evidence that Petitioner's constitutional rights were violated to his prejudice." Spivey however contends that Philomena's violation of the plea agreement "clearly calls for the proceedings to be vacated."
The particular prosecutorial misconduct Spivey alleges, however, would be evidenced by the trial transcript. This court, in fact, has already addressed the issue regarding violation of the plea agreement in Spivey's direct appeal. Consequently, Spivey has failed to demonstrate prejudice in this regard.
Although the prosecutor's statements were both racist and offensive, Spivey fails to establish that he was prosecuted due to his race or, in the alternative, that others similarly situated were not prosecuted. Moreover, Spivey's contention that the prosecutor was politically motivated also remains unsubstantiated. Spivey has offered no proof that Philomena prosecuted him solely to win the race for Ohio Attorney General. Spivey's final assignment of error is also meritless as he has failed to offer adequate proof in support of his allegations.
For the aforementioned reasons, we affirm the decision of the trial court.
Vukovich, P.J., and Waite, J., concurs.